The next matter, number 24-2108, Lucio Evaldo Cabral Fortes Tomar v. Pamela J. Bondi. At this time, would counsel for the petitioner please introduce herself on the record to begin. Good morning, Your Honor. My name is Maria Huang and I'm appearing on behalf of the petitioner, Mr. Lucio Cabral Fortes Tomar. With the Court's permission, I'd like to request two minutes for rebuttal. You may. Thank you, Your Honor. The parties in this case agree that the Board of Immigration Appeals, in matter of Cortez Medina, held that for a willful exposure of private parts to constitute a crime involving moral turpitude, there must be an element of lewd intent. Cortez Medina describes lewd intent as indecent or obscene intent and includes acting for the purposes of sexual arousal, gratification, or affront. However, conduct such as mooning, nude sunbathing, nude dancing are not turpitudinous. Massachusetts General Law, Chapter 272, Section 16, does not require lewd intent and therefore cannot be a crime involving moral turpitude. In this case, the government invents an element of lewd intent that cannot be found within the Massachusetts statute and this arises from a deep misreading of the Massachusetts law. The government alleges that an intent to alarm or shock elevates this offense to that of a CIMT. But the government's logic fails for two reasons. The first being, there is no element of intent to alarm or shock. There is an element of alarm or shock and to learn how Massachusetts interprets this element, we have to look to Massachusetts case law. As described in the case of Matter of Cerna, the BIA explains that the Board of Immigration Appeals has no expertise as to how Massachusetts interprets its own laws. Cases such as Commonwealth v. McGuire and Commonwealth v. Taranofsky provide a blueprint as to how Massachusetts interprets its own laws, in particular the element of alarm or shock. And they show that the focus of this analysis of this offense is not on the intent of the exposure, but rather the impact on the observer. So element two is intentionally? Yes, Your Honor. So the SJC has listed five elements and number two is intentionally? Yes, Your Honor. Because it seems like the nub of this case, at least as it's just been explained, is what does that intentionally apply to? Absolutely. So you say it applies to which elements have to be intentional in your view? Absolutely, Your Honor. So I think Matter of Cortez Medina explains this quite elegantly, that a willful exposure of private parts is insufficient to constitute a CIMT. Here we have a parallel situation. We have an intentional exposure of private parts, but that alone does not elevate this offense to that of a CIMT. Go ahead. So you read McGuire to state that the only thing that has to be intentional is the exposure? Yes, Your Honor. Because it's not uncommon for the mens rea to run through other elements, but you think for this particular issue it's only to the exposure itself? Yes, Your Honor, because that is how the Massachusetts courts themselves have interpreted it. In Commonwealth v. McGuire, they show that the situation, excuse me, Your Honor, in neither of these cases, Commonwealth v. Taranofsky or Commonwealth v. McGuire, does the SJC contemplate the motivation of the defendant, sexual or otherwise? Furthermore, the second reason that the- Well, I mean, maybe it says that maybe. Does that make sense? I mean that you'll be convicted of a felony, so there's a misdemeanor and there's a felony, right? There's the indecent exposure, and that you'll be convicted of the higher one that's a felony and subjects you to three years in prison with no additional mens rea, that it's the same mens rea as would make you guilty of the misdemeanor, because if I intentionally expose myself, that is the misdemeanor, and now it's this higher felony, and you're saying there's no real additional mens rea. No, there is not any additional mens rea. And the Massachusetts legislators and courts certainly have the know-how of how to implement a higher level of intentionality. They do so under Massachusetts General Law 272, Section 15, the statute that covers both indecent exposure but also lewd, wanton, and lascivious conduct. And in this circumstance, they do require that there be a sexual motivation. Furthermore, in Commonwealth v. Qualey, Massachusetts appeals courts specifically states that an intent to engage in lustful or sexually gratifying conduct is not required for conviction under this statute. Counsel, Qualey though is an unpublished decision, isn't it? Absolutely, Your Honor. Under Massachusetts law, are we allowed to rely on unpublished decisions? I think we are in this case because the threshold is whether there is a realistic probability that non-terpetuous conduct would be prosecuted under this offense, and Commonwealth v. Qualey provides a real-life demonstration of that. Do you think intentionally runs to openly in the statute? No, Your Honor. Well, that seems odd to me because it says openly or with reckless disregard of public exposure. So reckless disregard would mean I acted with an understanding but not really an intention, but then the other word is openly. So if one thing is reckless disregard but there's something else, it seems like the other thing would require me to either know or intend one of those to do it.  So the physical act of exposure must be an intentional one. I think cases— You're saying that it's the first. So I'm just looking at—I'm looking at McGuire, which you referenced to us, and I'm looking at the listing of the elements, and it says proof of five elements is required to support a conviction, i.e. that the defendant, one, exposed genitals, breasts, or buttocks, two, intentionally. So you're saying the intentionally just refers to the first element. Yes, Your Honor. And then all the other elements are in and of themselves assessed separately. Yes, Your Honor. And I think that is demonstrated through the Massachusetts case laws that we cannot conflate the elements of the offense and combine them in whatever way is convenient to constitute a crime involving moral interpretation. So what about openly? What do you have to—what is the—if I did it accidentally, I can't be convicted for that. You're correct, Your Honor. What is it for openly? So we can turn to certain cases, for example, like Commonwealth v. Swan, that discuss the issues of openness, that it can't be conduct that's done privately, you know, within your home, or conduct that is, you know, being attempted to be hidden away, but it has to be conduct that is—could be subject to the public viewer. Let me—I'm not remembering right now which case it was, but there was one case that I read, or that was referenced in one of your briefs, that talked about a sunbather, a nude sunbather, falls asleep outside and doesn't realize, you know, that they're partially nude and doesn't realize what's happened, that they've been exposing themselves, and therefore there was not a conviction under the statute. So I think my question is similar to what Judge Aframe was asking because I'm trying to understand how this works. So under the first element, the person has to expose a part of their body, and the second element is intentionally. So the defendant has to expose a part of their body intentionally. So then the third element, which is openly or with reckless disregard of public exposure, how is that different? It's not about whether the defendant is exposing part of their body intentionally, it's whether there are other people around. That's your argument, essentially? So Commonwealth v. ORA is a helpful case in the two ways. May I finish, Your Honor? Yes. Commonwealth v. ORA is a very helpful case in two ways. It discusses the issue of nude dancing, and nude dancing conducted within a bar for that specific purpose and nude dancing in public in which you may offend, alarm, or shock an individual. Furthermore, I'd like to note that the issue of openness is not the determining factor in this case. Even if, you know, we interpret the element of openness being quite liberally, it still does not equate lewd intent as being qualified. I understand that. I'm not saying openness is. . . I'm trying to figure out how far along this list of elements is intentionally travel, and I'm wondering did it travel at least as far as openly, which would make two modifying three, not just one, and then I'm wondering, well, maybe it goes the whole way. That's what I'm trying to think about. Absolutely, Your Honor. So our stance is that it cannot extend to the other elements, but even if it did, openness, alarm, or shock upon an observer does not equate lewd intent. Before you sit down. . . Sorry, can I ask one more question? So alarm or shock, do you take that to have, can non-lewd conduct, alarm or shock, so forget intention for a second because I think another way you could win is to say this just covers non-lewd conduct. Absolutely, Your Honor. Is that your construction of alarm or shock? And just so I ask one question, I'll ask my second question in the first, which is the statute itself, the text of it, is lewd or lascivious. In Quinn, the court puts a footnote that defines those words in a sexual way, and then the elements it puts out as it describes the elements are alarm or shock. And my thought would be you should read alarm or shock in light of the statutory text of lewd or lascivious. So to answer your first question, alarm or shock cannot equate lewd intent. We see that in cases like Commonwealth v. Ternofsky where we have a sunbather, albeit an unconventional one, but a sunbather nonetheless. In the case of Commonwealth v. Ora, a woman was nude dancing as a form of political protest at Harvard Square. In an anti-consumerism case, these are cases where lewd intent, sexual motivation, is clearly absent and is an extremely helpful blueprint as to how Massachusetts interprets its own laws. And your second question of whether the language of the specific word lewd within the statute equates lewd intent, it simply doesn't for the very same reason. Massachusetts has developed its elements very distinctly through case law, and they have not interpreted lewd intent, or excuse me, as that word lewd as lewd intent. And they've done so very specifically in Qualey. And we've also seen other cases around... So I guess I'm not so much asking about intent. Qualey was something that was sexual. So I guess my question is does a non-can, non-sexual conduct involving a nude someone exposing themselves, forget intent, meet the alarm or shock standard? Absolutely. I think the nude dancing as a political form of protest is an example, a clear example of that, Your Honor. Thank you very much. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record to begin? Robert Tennyson for the government. May it please the Court. Let me start out by trying to clarify something. Our position isn't that there is a specific intent to shock or alarm, rather that you have to intentionally expose yourself in a manner that shocks and alarms. It's a certain kind of actus reus there. It's not just any exposure. It's one that shocks and alarms. And under the board's interpretation of what it means by lewd intent, that's all that's required. You've put it as if intentionally came after. I mean, they divide them up into numbers. If I said you intentionally exposed your genitals in a way to alarm or shock, and then I'm reading it as one thing I put intentionally in front, I had two things together, I see the intentionally covering the whole thing. What's strange here is they say expose the genitals intentionally and then a bunch of other things. And the one you care about the most, I think, which is alarm or shock, the cases talk about that being an objective standard of the community or reasonable person. Right. And so that doesn't strike me as intentional. I'll just tell you what strikes me. It strikes me as what we have here is a statute where the wrong thing is to expose yourself in public, and that could be one of two crimes. That can be indecent exposure, a misdemeanor, or the felony that we're dealing with here. And the mens rea runs to the thing that's bad, and the thing that it's bad to is expose yourself, and we're going to punish you more if the community thinks it's alarming or shocking. And so we don't care about your intention. We care about your intention as to exposing yourself, and then if it's done in this heightened way from the perspective of the community, we'll punish you more harshly. The response to that is say, we know, so as you said, what's going on is that the exposure has to meet a certain standard. It has to fall into a particular box, and that is it has to be objectively, as some of the Massachusetts courts said, one that shocks or alarms. But that's the same thing as say you have a cow tipping statute, and it says, you know, you tip a cow intentionally, and it's purple. It may not be purple cows, but the thing is, there's an objective standard for when cows are purple. You intentionally are tipping a cow. It can be the dead of night. Purple cows, it's the intentionally tipping a cow under particular circumstances. That's what the statute requires. That's the lewd intent. A person doesn't have to think, aha, I'm engaging in this to shock and alarm someone. They don't have to be acting in a way in which they have a particular intent to be obscene or indecent. They have to be exposing themselves in a manner that is obscene or indecent. But isn't what you're describing, then, you have to do something with intent that can mistakenly be lewd? I mean, that's what you're describing, and isn't that the opposite of acting with lewd intent, which is actually the crux of this case? So you have to act in a way. You have to intentionally. I'm not going to say, you know, it's lewd, but you know that you're doing particular conduct. That is lewd. I mean, the thing is, is that a person who you can have, the second one requires more of a specific intent. Yeah, no, I agree with you that both are legally possible. Both of those are legal constructs that are possible. Right. But the issue in this case is whether something falls into the definition of acting with lewd intent. And acting with lewd intent seems to me very specifically to require a mens rea that includes this lewdness, that we can attribute to the actor an intentional lewdness. So let me clarify what I'm saying. You are intentionally engaging in this act that is lewd, but the way in which we know it's lewd is because of certain standards that we apply. That you don't have to know it's lewd per se, right? You don't have to act in a way. But you act in a way, say, for example, you know that you are in a circumstance where you're getting naked in front of a woman and her two children, for example, in one of these cases. But the board says intent to be lewd, right? The board doesn't say intent to be lewd. It says lewd intent, and it's interesting. So take, for example, the recent case, you know, in Cortez Medina, the statute they weren't construing didn't necessarily require you to have an intent to be particularly lewd. And subsequently, in Majorca Epina, which the board is attempting to sort of explicate its decision in Cortez Medina, they dealt with a Virginia statute, which doesn't have that intentional component. It just has you intentionally engaging a person, intentionally engaging in an obscene act. And then there are these general... Engaging in an obscene act. Right. Obscene is another way... Obscene is another way of saying lewd, right? And so in the same way... Aren't all of those cases... What the board is talking about in all of those cases is motivation. Right. Which makes sense if you're trying to deport people, right? That's what this is going to do. This guy is going to be deported, and the idea is we'll deport people who intentionally engage in lewd conduct. And we're not... The board has said we're not going to deport people who engage in naked conduct without the intention to be lewd, which seems like a logical place to draw the line. And so that seems to be why we would want this lewd intent that the Massachusetts statute doesn't really apply because it's looking at shock or alarm through the reasonable person, not the defendant. So the response to that is to say what we're doing is we're cleaving out a box here. The individual has to have the intent to have engaged in the exposure in a certain way. That is, to have engaged in... That's where I think we're adding things. I don't see that. Counsel, let me try it this way because I think this is maybe where we're all getting tripped up. As I read... Because we're interpreting Massachusetts law. You agree with that. And we don't defer to the BIA on the interpretation of Massachusetts law. So what the Massachusetts courts say, that's what we have to do. So as I read the Massachusetts court cases, they say that Elements 4 and 5, which is what we've been talking about, Elements 4 and 5 are based on the impact on the observers. That's how the courts in Massachusetts are analyzing those factors. One is a reasonable observer standard, and one is a subjective observer standard. But what the BIA has said is that the defendant has to have a lewd intent. So it has to be the defendant's lewd intent versus under Massachusetts law, Elements 4 and 5 are about the impact on observers. So I don't see how those two things relate. And I think that's what we're all asking you in slightly different ways. Can you address that? So we have the fifth element, which is clearly from the observer's perspective. The fourth element is about defining what kinds of exposures are lewd. No, counsel, I think it's quite clear that the fourth element, I mean, this is what McGuire is about. It's talking about there's a subjective component of shock or alarm, and that's the fifth element. And then there's an objective, and that's the fourth element. But they're both about the impact on the observer. In other words, what the Massachusetts court was trying to prevent was people from being convicted because there's somebody that's subjectively easily offended by lots of things, which is fine, but it just can't be a crime. So it has to also offend a reasonable observer. And if I may, there's a quote from McGuire. The fourth element, shock or alarm impact, requires the Commonwealth to demonstrate a substantially more serious and negative impact. And that's to distinguish between indecent exposure and this offense. And it's all about impact. It's all about impact, but the thing is, is that if we were to say that there's some objective, right, the objective impact is the objective impact or the categorization of the exposure. It's about what kind of exposure it is. It is objectively about what kind of exposure. So if I said, you know, we're out on a football field. It has to be Thursday, and you have to know it's Thursday. Well, that's a subjective thing. The objective thing is it's Thursday on a football field is the definite description here. It is the thing itself, and that's where the intent goes. Even if you have an objective requirement, the objective requirement is, you know, provides, is an adjective to whatever that exposure is. It modifies that exposure. It tells us what that exposure is, and it's that intentional exposure in that way that matters. So even if four has to do with the reasonable impact, not the specific impact to another person, but the reasonable impact that a person would have, that any person would have confronted with this. And those are going to be things like, you know, well, that have been described, right? Things like masturbation in public, getting naked in front of a woman and her two kids. You know, being naked in front of children of tender years. These are all definite descriptions. These are all modifying what is the exposure. And it's that intentional exposure of those types that then causes someone else to, you know, that's open and causes someone else to be actually shocked and alarmed. That is what the statute covers. Let me just ask a follow-up question. I just want to make sure I'm understanding your argument, and I'm going to try to do it by analogy, and I hope I don't do it poorly. Let's pretend that we're going to deport people who trespass on Judge Aframe's property. Now, we all know trespass requires intent, but it only requires intent to go onto the property. It doesn't require intent to actually trespass on somebody's property. It doesn't require intent to commit the... Let's say it's a criminal trespass. So would we deport people who intend to go on the property, or would we only deport people who intend to go onto Judge Aframe's property? And the analogy here is, are we going to deport people who intend to do something, or do we only deport people who intend to do something that they know is lewd? Right. I think we deport the people, and I think there's a third... There's a middle ground between the two. And I think having specific... Let's say instead the statute is to go onto a federal judge's property, right? And you have trespass, right? You have the intent to trespass. And the person has the intent to trespass on Judge Aframe's property, right? They don't have... But they don't know you're a federal judge. That's just not in their mind at all. Right. Right? That is the... Why would we deport that person? We'd want to deport that person because there are certain categories, certain ways in which you trespass that we want to trust, that we are willing... that we want to deport you for. But you didn't want to deport all the people who are naked. You wanted to deport an aggravated group of naked people, the ones doing it in a way they know is lewd. That makes complete sense to me. But you could have said, all the naked people get deported, but we're not going to do that. We're not going to do that. We're not deporting all the nude sunbathers. We're not going to do that. We're going to create a category based on their intention, which makes complete sense because you want to not have people in the country who have bad intentions, not people who did something that sometimes is okay and not okay based on what other people think instead of what they think because we're trying to judge their character. Right? That's like what the BIA does. And what Judge Rickleman, I think, has helpfully explained is the way this statute's doing it, it's concerned about the community and distinguishing between different kinds of nudity in public based on how the community and a victim feels about it. And that gets not to the mindset of the person, which is what the BIA cares about. That all makes sense to me, why Massachusetts has a different interest than the board, and that's what makes it overbroad, I think. Okay. Not really a question, but feel free to respond. It's a different way of saying I can see why you would see the statute that way. I don't think that the Massachusetts statute, that all the cases, so, for example, Tarnovsky, I don't think McGuire operates in that way. I think there are other cases that say, of course, you have to have some sort of sexual, prairie intent, and if I could... It's not Quealy, obviously, but it's also another QU one. But this does come up, that there has to be this kind of underlying sexual motivation to it, that it's not just purely in the abstract, you know, and that's why we're cutting out particular kinds of community reactions and shock and awe, that it's not just sort of... It's not just community in the abstract. You have a particular intent there, and it's a certain circumstance, and that's the reason why these things are being pulled out under Section 4. I know we've gone far over. One last question. Looking at the five elements that are listed in McGuire, we've talked a lot about how intentionally is the second element. The third element is openly and with reckless disregard of public exposure. Intentionally and reckless disregard are typically two different levels of mens rea. They are. Don't you think that by putting reckless disregard as the third element, it kind of cuts off the idea that intentionally could therefore flow through to the other elements? I think that it sort of... The way in which it's enumerated doesn't help. I think that third part is purely directed to the openness requirement, you know, openness or reckless disregard that there will be others present who would be offended by the conduct, right? That does seem to be... That does seem to stand out in the same way that 5 stands out. But I... And I believe it is a case from 2020. I'm going to go back. I'm going to get it wrong. It may be Vera, but it may not. In which they do... No, it's Waterman. They read 1, 2, and 4 together as a whole. So the Massachusetts courts have read those 1, 2, and 4 together as a whole in Waterman. And that is a published decision by the appeals court. All right. If this court has no further questions for me, the government rests.  Thank you, counsel. Thank you, counsel. At this time, would counsel for the petitioner please reintroduce herself back on the record? She has a two-minute rebuttal. Maria Huang for the petitioner, Mr. Tomar. In understanding how intentionality and alarm or shock may or do not actually... Excuse me. Do not relate to lewd intent, I think we can look to our sister circuits. In Barrera-Lima, the Ninth Circuit analyzed the Washington offense of indecent exposure and found that conduct that caused affront or alarm was not the same as lewd intent. In the case of Cisnero-Guerrero, we saw the Fifth Circuit state that public lewdness was not a CIMT because conduct that offended or fronted did not require lewd intent. I ask that this court reverse the decision. This case is based solely on a single legal issue and Mr. Tomar has been in detention for nearly a year and a half at this point. So for this reason, I request that this court reverse the decision and vacate the order of removal. Thank you very much, counsel. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.